**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**FILED**

November 7, 2017
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**ROBERT WELLS,**
**Claimant Below, Petitioner**

vs.)    **No. 17-0188** (BOR Appeal No. 2051506)
(Claim No. 2015018773)

**KROGER LIMITED PARTNERSHIP I,**
**Employer Below, Respondent**

**MEMORANDUM DECISION**

Mr. Wells appeals the consistent decisions of the Office of Judges and Board of Review. Mr. Wells, by his attorney, Patrick Maroney, argues that he is entitled to an additional 14% permanent partial disability award based on the report of Bruce Guberman, M.D. The respondent, by its attorney, Sean Harter, argues that Dr. Guberman's report was excessive and the reports of Prasadarao Mukkamala, M.D., and Syam Stoll, M.D., contain more reasoned impairment ratings of 3% whole person impairment. Because Dr. Guberman's report does not take into consideration Mr. Wells's past injuries or explain how it impacts his current impairment, we hold that the Board of Review was not in error for relying on Dr. Mukkamala's report, and granting a 3% permanent partial disability award.

Mr. Wells injured his shoulder, neck, and ankle in an accident at work. The claims administrator held the claim compensable for left ankle, neck, and shoulder sprains. A cervical MRI revealed diffuse degenerative changes present throughout the cervical spine with loss of height in the disc space as well as disc bulges. An MRI of the shoulder revealed mild tendinopathy of the distal supraspinatus tendon. Mr. Wells was seen by Stanley Tao, M.D., for his left shoulder. Dr. Tao noted that Mr. Wells underwent a left shoulder acromioplasty and distal clavicle excision on April 8, 2009. Mr. Wells underwent three independent medical evaluations to determine his level of impairment related to the compensable injury. All the evaluators agreed that Mr. Wells was at maximum medical improvement.

Dr. Stoll placed Mr. Wells in Cervical Category II-B of Table 75 of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993), which yielded 4% whole person impairment. Dr. Stoll assessed range of motion impairment and found 17% whole person impairment for the cervical spine. He combined the 4% with the 17% to reach 21%. He placed Mr. Wells in Category II of West Virginia Code of State Rules § 85-20-E

1

(2006), for 5-8% whole person impairment. The 21% whole person impairment was adjusted to 5% to fit into the category. Because Mr. Wells had significant cervical spondylosis, Dr. Stoll deemed that none of the 5% was related to the injury. Using the range of motion model for the shoulder impairment, Dr. Stoll found Mr. Wells has 14% upper extremity impairment of the injured left shoulder and 9% for the uninjured right shoulder. The difference between them is 5% impairment of the left upper extremity, which Dr. Stoll opined was related to the compensable injury. However, Dr. Stoll stated that medical records reveal a previous surgery by Dr. Tao on April 8, 2009, when Mr. Wells underwent arthroscopy for impingement and joint arthrosis. Dr. Stoll apportioned half of the range of motion loss to pre-existing degenerative disease, resulting in 3% whole person impairment.

Dr. Guberman found that that Mr. Wells fit into Cervical Category II-B of the American Medical Association's *Guides* for 4% whole person impairment. He found that Mr. Wells had 6% whole person impairment due to range of motion abnormalities for a combined total of 10% whole person impairment. Dr. Guberman placed Mr. Wells in Cervical Category II of West Virginia Code of State Rules § 85-20-E, and found that Mr. Wells belonged in the upper range of the category for a total of 8%. Dr. Guberman concluded that Mr. Wells had a total of 5% whole person impairment due to his left shoulder range of motion abnormalities. Dr. Guberman found 1% whole person impairment based on the range of motion deficits in the left ankle. His total impairment rating was 14% whole person impairment but since Mr. Wells had already received 3%, he suggested an additional 11% whole person impairment.

Dr. Mukkamala found 8% whole person impairment using the American Medical Association's *Guides* and West Virginia Code of State Rules § 85-20-E. Dr. Mukkamala apportioned half to the motor vehicle accident from 2006 and the other half to an injury in a different claim. Dr. Mukkamala concluded that Mr. Wells did not suffer any cervical spine whole person impairment related to the injury at issue. For the left shoulder, he found 4% whole person impairment. Dr. Mukkamala apportioned half the impairment to the motor vehicle accident of 2006 and half to this claim, for 2%. He also found 1% whole person impairment of the left ankle. The impairments were combined for 3% whole person impairment due to the compensable injury.

The claims administrator granted Mr. Wells a 3% permanent partial disability award. The Office of Judges found that Dr. Mukkamala's report was the most credible and reliable report of record because his report fully considered all of Mr. Wells's pre-existing degenerative changes and was more recent. The Office of Judges discussed that in relation to the cervical spine rating, Dr. Mukkamala's impairment was closest to Dr. Guberman in terms of whole person impairment attributable to range of motion defects. The Office of Judges found that Dr. Stoll's impairment rating was much higher under the range of motion model than any other physician of record. The Office of Judges did not rely on Dr. Guberman's report because he did not apportion for either the 2006 motor vehicle accident or the prior 2010 injury. In relation to the left ankle, both Drs. Guberman and Mukkamala agreed that 1% permanent partial disability was appropriate. The Board of Review adopted the findings of the Office of Judges and affirmed its Order.

2

Dr. Mukkamala's report is credible, reliable, and supported by the evidence in the record. Dr. Mukkamala took into consideration other past injuries that Drs. Guberman and Stoll did not fully consider. We find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. A memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure because the arguments are adequately presented and the decisional process would not be significantly aided by oral argument.

                                                                                        Affirmed.

**ISSUED: November 7, 2017**


**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Elizabeth D. Walker

**DISSENTING:**
Justice Menis E. Ketchum